## Commonwealth v. Griel

*K. L. Shirk*, assistant district attorney, for Commonwealth.
*George T. Hambright*, and *John E. Malone*, for defendant.

ATLEE, P. J., February 16, 1934.—Edward R. Griel, the defendant, was convicted of the offense of embracery. The allegation of the Commonwealth was that shortly before the June, 1932, session of the quarter sessions court, beginning the second week in June of that year, one William F. Hoffman, who had been drawn upon the grand jury, was approached at his place of business at Landisville by the defendant, who came to Hoffman's place of business. Hoffman testified that Griel said to him that Griel had heard that " 'I was to be a grand juror the following week, and that he was out in the interests of Alderman Kline, and anything I could do for Alderman Kline would be appreciated'; that the witnesses for Alderman Kline were not any good, or something like that, and that he mentioned a man by the name of Herr and I believe Ann Eberly." It seems that Griel was brought to Hoffman's place of business by one Christian D. Musselman, but Musselman did not hear the conversation.

The defendant testified as follows:

"A. Yes, sir. I wanted to see them all together. So we went over there. We talked about running Christ. Musselman for county commissioner, and we talked about the Democratic side and the Republican side, and finally he got on to the subject of Judge Groff. Hoffman says, 'What is Judge Groff trying to do?' He says, 'I am on the grand jury the way I hear, and I don't know what to do.' I says, 'I have never been on the grand jury, myself; but I have been told that all you have to do is to listen to the testimony of the Commonwealth in each case, and, if you believe it is sufficient, vote for a true bill; if you don't think it is sufficient, vote to ignore the bill.' He says, 'By the way, the Benedict case is coming up, isn't it?' I says, 'I believe it is, and there is a lot of interesting cases coming up, that will make very interesting cases; I believe they have raid cases, and they have a bribery case.' He says, 'What is the bribery case?' I says, 'Bill Kline.' He says, 'Tell me about it.' I says, 'He was arrested on a bribery charge on an affidavit of a woman who was arrested for running a whorehouse.' Then he says, 'Groff is raising hell with people, isn't he?' He started to talk about Judge Groff and the district attorney, and that was the end of our story. When I left, he says, 'I am very glad to have had a talk with you.' I didn't say I was there to influence him for Kline. I didn't say that.

"Q. Did you attempt to control or influence his action, in any way, so far as Mr. Kline was concerned? A. No, sir. Q. Or, so far as any of the indictments that were about to be submitted to him the following week, did you attempt to control or influence his conduct, in any way? A. No, sir. Q. Did you offer him any bribe, or anything of the kind? A. No, sir."

The following reasons for new trial have been filed:

1. The verdict is against the law.

2. The verdict is against the evidence.

3. The court should have instructed the jury, in view of the witness, William F. Hoffman, having testified that he committed perjury in the matter of the return of the indictment in the case of Commonwealth v. William T. Kline, that their verdict should be "not guilty."

4. The court should have charged the jury that inasmuch as the Commonwealth submitted no evidence that William F. Hoffman was a grand juror at the time of the alleged conversation of the defendant with him, the verdict of the jury should be "not guilty".

5. The court erred in not affirming defendant's first point, which was as follows "It would be dangerous to convict upon the uncorroborated testimony of the witness, William F. Hoffman, who admitted on the stand that he had sworn to different facts upon his return as a grand juror."

6. The court erred in not affirming defendant's second point, which was as follows: "The verdict of the jury must be for the defendant."

7. The court erred in failing, in its charge to the jury, to direct their attention to the fact that the witness, William F. Hoffman, admitted he committed perjury and the danger of convicting a defendant on the uncorroborated testimony of a man who admits he was guilty of perjury.

The first two reasons, being purely formal, need not be considered at length.

The fourth and sixth reasons may be considered together. It is undisputed that on April 15, 1932, William F. Hoffman was drawn as a grand juror and served as such at the ensuing June sessions of 1932, and that this grand jury considered certain indictments against one William T. Kline. In answer to these two reasons for new trial, the instant court refers to the opinion in the case of Commonwealth v. Kauffmann, 1 Phila. 534, 537, as follows: "From the moment that the name of the juror is announced in the papers, yes, from the time it is

drawn from the wheel, his person is consecrated to the purposes of justice. The law draws around him an invisible cordon, which no man may pass but at his peril. It is as complete the moment he is selected as when he is empanneled." This statement of the law clearly expresses principles uniformly adopted by the courts of Pennsylvania. Approaching a juror before he is formally in court is as much of an offense as approaching a juror after he is sworn to perform his duties.

The court now will take up reasons three, five, and seven. Reference to these reasons, as set forth at length herein, shows that the defense contends that Griel could not be convicted on the testimony of William F. Hoffman, because Hoffman had committed "perjury" in the matter of returning the true bills in the cases of Commonwealth v. William T. Kline. Hoffman was a member of the grand jury. When the clerk of the court took the return of the grand jury, he asked the members if any of them had been spoken to or written to concerning any matters pending before them, and when so asked Hoffman did not immediately disclose the fact that he had been approached by Griel. The Act of March 31, 1860, P. L. 382, sec. 14, creating and defining the offense of perjury, refers specifically to the offense of wilful and corrupt perjury. Even if Hoffman had been indicted for perjury, it is extremely doubtful that he could have been convicted of that offense in the light of the reasoning in the case of Commonwealth v. Ryder, 12 Lanc. 97, wherein it is held that to sustain a prosecution for perjury it must appear that the party was lawfully sworn and that the oath was false, that the intention was wilful, the assertion absolute, and the falsehood material to the matter in question. Further reference to the Act of March 31, 1860, P. L. 382, sec. 14, discloses that only on conviction shall one convicted of perjury "be forever disqualified from being a witness in any matter in controversy." Hoffman never had been prosecuted, let alone convicted, and the court legally could not disqualify Hoffman from being a witness in the absence of a specific conviction. In charging the jury, the court said: "Mr. Hoffman testified that, when he was asked, in court here, whether he had been spoken or written to, he answered that he had not, when the clerk of the court interrogated him, and he gave, as his explanation of that, that he knew he had not been influenced, and that that was why he had not disclosed the matter in open court. He said he had already spoken to the district attorney. The matter of his credibility, as well as that of all the witnesses, is for you. You will remember all Hoffman's testimony in regard to his alleged conversation with Griel, and you will remember all his testimony in regard to his explanation or attempted explanation of his answers to the clerk of the court. You will consider all that testimony in reaching a conclusion as to the credibility to be attached to the testimony of William F. Hoffman."

Short of actually charging the jury that the defendant could not be convicted on the testimony of Hoffman, it is hard for the instant court to understand how any court could have gone further than did the instant court in leaving to the jury the question of the credibility to be attached to the testimony of Hoffman. As to the verdict rendered, the jury might well have convicted the defendant on the defendant's own testimony referred to above.

After careful consideration of the entire record, the court now discharges the rule to show cause why a new trial should not be granted in this case.

Rule discharged.

From George Ross Eshleman, Lancaster, Pa.